This time we'll hear the Estate of Stanley Kauffman versus the Rochester Institute of Technology. Good morning. Good morning, your honors. May it please the court, my name is Ken Norwick. I represent the Estate of Stanley Kauffman in this copyright case. Stanley Kauffman was born in New York City in 1916 and he died in New York City in 2013 at the age of 97. In that seven decade career, he was a very distinguished author, teacher, what we now call a public intellectual. He hosted a public television program. He wrote numerous books. He wrote for many, many publications, most conspicuously the New Republic. He started to write in the New Republic in 1958 and he wrote until he died 55 years later. Was he paid a salary by the New Republic? Sorry? Was he paid a salary by the New Republic? He was paid a regular payment for the columns, for the movie reviews. Per column?  Per column? Per column. Later on in his career, he got a per monthly salary of $3,000 or something, no? Well, there was a regular payment. He delivered his column, which was expected, and then he delivered separate pieces, one-offs, which were not expected, which he originated. And he said, here's some more pieces. Would you like to publish them? Are any of the one-offs at issue in this case? Yes. Yes, they are because the letter, the supposed work-for-hire letter, says all articles. It covers all articles. It covers the one-offs. And as a matter of law, the one-offs could not be work-for-hire because they were not specially ordered or commissioned. The one-offs can't be work-for-hire, but the letter says, we always understood that all works were works-for-hire. That's impossible. That's simply impossible. And therefore, they didn't understand that. And there was nothing that was communicated between them. Your Honor, for 46 years, from 1958 to 2004, Mr. Kaufman was the sole copyright owner of every piece he wrote for the New Yorker, for the New Republic, the sole copyright owner. That will not be disputed. It was not disputed below. Then let me ask you this. At A85 of the appendix, it said, the New Republic sold, signed, or transferred to Stanley Kaufman all the rights to his writings for a series of years, 1959 to 65, 67 to 69, 70 to 79. Why was that necessary if he retained all the rights in his works? Why did he get from the New Republic a transfer of that? Under the Copyright Act of 1909, which expired at the end of 1977, there was this notion of indivisible copyright. And this Court has said that you can only have one copyright. We're going to recognize that the copyright in the name of the publisher covers the copyright for the individuals. This Court has said most recently in the Morris case, which we cite, under the old law, which doesn't directly apply here, but under the old law, the magazine had to do that to protect the copyright for the individual author. And what the New Republic did quite properly and quite consistently with what other publishers said, yes, we had to copyright this in our name, we're giving you back your copyright. And so he was the copyright owner under the old law, under the 1909 Act, for every piece from 1958 through 1977. No question, he was the owner if only because the New Republic gave him back those copyrights. Now, from 1978 to 2004, I think that's 26 years, he was the sole owner of all those copyrights because there was no writing. And the Copyright Act requires a writing. So under the new law from 1978 to early 2004, he owned, indisputably owned, every copyright to everything he wrote for the New Republic. So we have 46 years, thousands, thousands of pieces, thousands of copyrights, which he and he alone owned. More relevantly, perhaps, he exercised his ownership. He granted rights all over the place. He granted reproduction rights. He granted excerpt rights. He granted rights as the owner, not a peep out of New Republic, not a word out of the New Republic. He was recognized to be the owner. So the New Republic comes up in 2004 with a form letter. It's page 7 of our brief. And if I can just, it says, We have always understood in doing business with you that in light of our regular monthly compensation arrangement with you, all articles you have written for the New Republic have been works made for hire, as that term is defined under the U.S. copyright laws. The letter doesn't use the word ownership. The letter doesn't say you're giving us back 46 years worth of copyrights. The letter doesn't say that. And I want to read to you from what RIT says about that letter. It says, The plain language of the 2004 letter refers to the term, quote, works made for hire, close quote, as it is, quote, defined under the U.S. copyright laws. It thus plainly indicates that the term has legal significance under the copyright law that could easily, easily be ascertained by reviewing the statute. That's their defense for this letter, is that Stanley Kaufman presumptively doesn't know what works made for hire, as defined by the Copyright Act. He could go to the statute, go to the copyright law for the United States, and it will easily be ascertained whether or not it applies. Now, you know, Your Honors, I've been a copyright lawyer for over 50 years. Nothing's easy about the Copyright Act, and nothing can be found here that explains it. This letter was a shame. Can I just ask you to tell me why Playboy doesn't control here? In Playboy, some of the legends were effective in creating works for hire on the checks, and they were executed after the work was created and delivered to Playboy. Why isn't that holding that the writing can be after the actual transaction and still be valid under the statute? If you saw my footnote, I litigated Playboy. I saw that. Playboy does apply. Playboy absolutely applies. What Playboy says is, in the fact pattern of this case. Now, what was the fact pattern of that case? They were work-specific writings, one at a time, executed simultaneously with the creation of the work. And what this court said, this court said, we don't want a situation where the author owns it for 46 years and then suddenly doesn't own it anymore. This court said that's not right. This court said we want to have clear and definite ownership of copyright. That doesn't really fit 46 years of one owner and then a new owner based on a form letter that says look it up in the Copyright Act. And, again, Playboy says in the fact pattern of this case, we will assume, that's what this court said, assume that a writing after creation might be permissible. This court relied on the numerous hypothetical, which said the paperwork may not be completed until the work is created, until after the work is created. Playboy absolutely applies, and I am betting this case on Playboy applying here. And Playboy says in the fact pattern of this case, we will assume that a writing can follow creation. The other thing Playboy says is the issue is, what did they understand 46 years ago or 10 years ago? They had to have understood at the time of creation that it was work for hire. There's not a shred of evidence, not a hint in this case, that they understood any such thing. The editor, Leon Riesenthal, says I never discussed it with Stanley. Stanley was issuing licenses all over the place. New Republic never said boo. And if I may, just one more thing. Gary Friedrich and Judge Droney was on the panel with Gary Friedrich, says you can't create a work for hire relationship ex post facto. Okay, that means you can't have a writing that says, we hereby declare your 46 years of work to be work for hire. Let's change a few words. We hereby confirm that we always understood that your work was going to be work for hire. That's this case. 46 years later, the only change in the writing is, we hereby confirm that we always understood your work was work for hire. They have nothing else. We'll hear you on rebuttal. Oh, no, go ahead. Is it clear this agreement was not filed with the Copyright Office? That's correct. Assignments would have to be, is that correct? I don't know that they have to be, but they're recommended to be for a consistent proof of ownership. But they're not required? No. But they customarily are? Yes. So what I'm wondering is, if the theory of not a, well, you say Playboy applies. Let's even give you the benefit of the doubt and say, if the theory is we should extend Playboy, or it should decline to because it would upset settled expectations, if these agreements aren't filed anywhere, where's the settled expectation? The expectation, Mr. Kaufman understood he was the copyright owner for 46 years. If you're talking about the transfer is under the old law. No, I'm thinking about if they both thought this agreement did constitute him as not just an owner, as you said, but an author, and then the Institute issued a license, it would be up to Stanley Kaufman or his estate to object. Is that the idea? The Institute, I'm sorry, the Rochester Institute? Yes. Well, they didn't issue any licenses. They published a book because some scoundrel… I understand, but if they thought they now had the rights pursuant to this agreement, they could then license them. The agreement, the quote agreement, was between the New Republic and Stanley Kaufman. They were not a party. They didn't know about this until late in the litigation. They didn't rely on it in publishing the book at all. They didn't know about it. Nobody knew about it. It was buried in the files of the New Republic. They served a subpoena on the New Republic, and lo and behold, we have this letter. We didn't know about it. They're here, I think, telling us they have the rights by virtue of this agreement, aren't they? I don't know the they in that question, Your Honor. The they, the New Republic? No, the appellee of the… No, they have no rights. They never claimed any rights. They do not claim to this day that they have the right to publish this book. They admit this book is full of infringements. That's not in dispute. This entire book is full of infringements, and that is not in dispute. They don't claim any rights. Okay. Thank you. We'll hear you on rebuttal. Good morning, and may it please the court. My name is Mary Moore on behalf of appellee, defendant below, Rochester Institute of Technology. This case presents a straightforward application of contract interpretation in this court's analytical framework for later in time works for higher writings as set forth  and which has been approved by the court by the plaintiffs. It has been applied by courts throughout the United States. I wanted to just pick off a couple points. One that was brought up about was Mr. Kaufman paid a salary as it's shown on A85 in the record. He was paid a regular monthly flat fee for his contributions to the New Republic at least between the times of 1980, excuse me, 1998 and 2004. Was he also paid separately with respect to any of his contributions to the New Republic? There are no facts in the record regarding these supposed one-off unspecified writings that he supposedly provided to the New Republic. I believe that came up. What's at issue in this case? There were film review contributions that were made to the New Republic in the year 1999, all of which were made pursuant to his monthly compensation agreement with the New Republic, which is what is set down and confirmed in the writing from 2004. So these supposed one-off agreements that he apparently also provided, we don't have any facts or information about what those are, how he was paid for those, if it was different from the flat fee agreement. What's at issue are 1999 film review contributions which were undisputedly provided pursuant to the monthly arrangement. Are you saying their works were hired because he's an employee or because of this agreement or both? Because of the agreement, not because he's an employee. So the payment is irrelevant, isn't it? Under the statute, the works need to be specially ordered or commissioned by the hiring party. That's the first prong of the statute that was not disputed by Mr. Kauffman's estate. Mr. Kauffman's estate did not dispute the fact that the New Republic did in fact specially order or commission his film review contributions to the New Republic based on the fact that the New Republic was paying him this monthly flat fee compensation arrangement. That is evidence of the fact that Kauffman was creating these at the instance and expense of the New Republic. So that was not disputed. What's at issue here is whether or not the 2004 letter is an effective writing memorializing the work for hire relationship. So without the agreement, you don't have any claim, any argument here, right? Correct. The agreement needs to be memorialized. Okay. And it was in fact. So now the question becomes, can an agreement, and this agreement was five years after the fact? Correct. And why should that be binding? Your Honor, under this court's precedent in Playboy Enterprises, it touches on the win issue. That case rejected the notion that the work for hire writing must be done prior to creation of the work. What really matters. I understand it didn't say it has to be prior, but it was a case that approved a later agreement within days, didn't it? Yes, Your Honor. So. Did the opinion talk about the fact how close it was in time? It did, Your Honor. And in that. Why on earth would we extend it to five years when the court seemed to be interested in an interval that was only a few days? So that case is highly distinguishable from a fact basis because the court said, quote, neither party proffered any direct evidence of the intent of the parties before creation of the work. So there was no evidence, direct evidence about if the parties had a work for hire agreement. In this case, it's very distinguishable because on the face of this agreement, it's unambiguous that Mr. Kaufman acknowledged, yes, this was always our agreement. So what about then in Appendix 529, Rule 56? Prior to the forum letter of 2004, Kaufman executed numerous agreements authorizing others to publish or otherwise use pieces he wrote for the New Republic. How does the 2004 agreement confirm his understanding in light of the fact that before that, he was licensing others that were supposedly works for hire? How is that consistent to confirm his understanding of the arrangement he had with the New Republic? So a couple things. On those licenses, and we went through this in the court below, is as you noted before, Mr. Kaufman had been transferred copyright ownership for many of his works in the 1960s, 70s, and 80s. So he could license those works. He owned the copyrights for them. The 2004 letter presumably would not change that. It's just recognizing the fact that they were originally contributed as works made for hire, but in the past, the New Republic did transfer ownership. There's also A-206 in the record. Is it... He was the owner during the 5-year interval? No, I'm not... No, I was speaking about the 1960s, 1970s, and 1980s, that copyright... Who was the author during the 5-year interval prior to the... During the 5-year interval, it's undisputed that the New Republic had specially ordered or commissioned these works, and that the parties had an oral agreement that they were contributed as works made for hire. That agreement was not effective because it hadn't been put down in writing. Therefore, who was the author at that time? It could not... The New Republic could not have enforced ownership of the copyright during that time, but the reality... I understand they couldn't. So who was the author at that time? It would have been Kaufman. He was the author. It would have been Kaufman. So your argument is he was the author for 5 years and then ceased to be the author thereafter. By default, the New Republic could not enforce its ownership until it had a memorialization. This court said that you can have a later in time writing. The fact is, Mr. Kaufman... It is undisputed, it is disputed, that Mr. Kaufman was out in the world saying that he owned copyrights. There's no evidence in the record that Mr. Kaufman was saying that he owned the copyrights for the 1999 works. You were asking about... I thought the whole idea of a work for hire is that the person who commissioned it had the copyright from the creation. Yes, Your Honor. So you just said that Mr. Kaufman had it for 5 years. Your Honor, the New Republic had an oral agreement with Mr. Kaufman. It looks to me as though he had it at least from 1978 on because there was no writing. Mr. Kaufman didn't act inconsistent with the oral agreement that they had throughout the course of their relationship that these were works made for hire. When he was licensing, he owned the copyrights. There's... A-206 is a permission where he... He had the copyright on license, you're arguing, from the New Republic. I don't understand... They allowed him... You're saying that they had the copyright from the creation, which would have to be, because that's the nature of a work for hire, but they transferred the copyright to him temporarily? Is that it? No, Your Honor. The New Republic was the author as the hiring party. Prior to the 1976 Act, there didn't need to be a writing. The New Republic regularly transferred ownership, even though they were works made for hire, so the New Republic originally owned them. And A-206, there's a permission where the New Republic, in 1993, gave permission to Mr. Kaufman that he could reprint any of his prior contributions to the New Republic. This further shows that that was always the party's understanding. Mr. Kaufman did not... believed that he owned these copyrights and was holding them out to the world. We have inadmissible declarations, self-serving declarations... But we have licenses from him for the period 1976 to 2004, right? There are a couple license agreements from that period covering works during that period, a very, like, two. But is that evidence that he thought he had the right to assign or license those works? Well, there's also evidence in the record that he received permission from the New Republic to publish any works prior to 1993, and any of the licenses weren't passed then. So there's not evidence in the record. The evidence that's clear on its face is the 2004 letter where Mr. Kaufman signed it, and he said, I agree that this has been our understanding the entire time. And the purpose of... the writing requirement as laid out in the Playboy Enterprises decision is predictability. And it was put in out of a concern for unilateral efforts to obtain work for higher rights years later. That's not this case. Mr. Kaufman had a prior oral agreement, which he acknowledged in writing. He didn't have to sign that document, but he did. And he's presumed to know the terms of what he signed and to have agreed to them when he signed it. This was not a unilateral declaration of work for higher status. This is not ex post facto. This is not, oh, them agreeing later that we're going to call these work for higher. They laid down in the agreement that these had always been work for higher contributions. I thought you agreed he was the author prior to the agreement. I think I misspoke on that point, Your Honor. There was always an oral agreement that the New Republic owned the copyrights. That oral agreement would have been ineffective without the writing. I concede that point. But there is a writing. It occurred in 2004. What is in effect, then? It seems to me it's a little vague to say the oral understanding didn't do it. Nonetheless, he is then the author, or he is not then the author. That's what I'm trying to get from your position. The parties were acting as though the New Republic was the owner. I'm not asking how they were acting or what they were doing or what the arguments are. I want to know what your position is. Is he the author prior to the written agreement? The New Republic couldn't have been enforced its rights as the author. That occasion never came to pass. Therefore, he's the author? That's not... One or the other is the author. Isn't that so? Yes, Your Honor. The parties had an oral agreement... What I'm asking is who. The New Republic was not the author. And therefore, isn't he the author? Presumably, he would have to be the author, but that's not this case. The 2004 writing was done. RIT is sued for copyright... That's the question, whether the writing changes something or not. So I want to know what your view is of who's the author before the writing. The parties understood the New Republic to be the author. That was their understanding. But that's not your position, is it? Isn't your position before the writing, he's the author? I believe that I misspoke when I said that. The parties understood... In any event, you're free to tell me either way. I'm just asking you what your position is. My position is that the parties had agreed that the New Republic was the author, and they memorialized that writing five years after the works in this issue. I understand what they did. They had an agreement, and we're at some point going to decide the legal effect of that. But you're here telling us your position in this litigation, and one of the issues that may well affect the outcome is to determine who was the author prior to the agreement. Yes, Your Honor. He was or he wasn't. It was not the New Republic, so it had to have been Mr. Kauffman. So then you didn't misspeak, right? I didn't miss you? You didn't misspeak when you said a few minutes ago that, yes, he was the author at that time. Yes, Your Honor. I come back to the point, though, that the world that we live in is one where he did memorialize his oral agreement, and that is what RIT discovered during the course of this case. And for purposes of predictability, that's what the writing requirement is for, so that third parties like RIT can go to the New Republic and say, do you have any written agreements regarding copyright ownership? So on your view, then, the writing agreement affected a retroactive transfer of authorship It could be described as that. Yes, Your Honor. Could it do that? It could be described as that. I think it's a... Is it something in copyright law that's a retroactive change of authorship? Your Honor, this court previously held that you could have a later-in-time writing. We cite to other district courts throughout the country that have allowed later-in-time writings executed 10 years after, 8 years after the works were created, a year after the works were created. Courts and parties have relied on this. And didn't those cases say who the owner is, not necessarily who the author is? The ownership and authorship is the same in the case of a work made for hire. So the work made for hire is about authorship, and so the hiring party is considered the author and the owner of the work. But that's if it really is a work made for hire. It's a little hard to say, because it's a work made for hire, that shows the author and the owner are the same, when the question is, is it a work made for hire at the relevant time? Yes, Your Honor. Okay. Thank you. We'll hear from you. Thank you. Ms. Moore says they always understood that it was work for hire. No, they didn't. There is nothing in the record, zero, that they had any understanding until 46 years into the... But the letters... Yes, the letter says we always understood. But they always did, so you can't say there's nothing... If that proves that they always understood, then that's what you will find. But it doesn't matter. What if it's conceded? I mean, what if Mr. Kaufman conceded? I always understood that, and they always understood that. If you want to give full force and effect to that letter, which doesn't use the word ownership and doesn't talk about 46 years of work and doesn't talk about the one-offs, obviously you have the right and the responsibility to do what you think is right about that one-page letter. There is nothing in the record to disprove or dispute that only Mr. Kaufman considered himself the owner. The New Republic never issued a license that we're aware of, never granted anybody anything to do with it. And prior to 2004, I want to say this as clearly as I can, Mr. Kaufman was the sole owner and author of every copyright, of every piece, undisputed. And I explained why in my main argument. There is no other claim of ownership. They very grudgingly will dispute... will concede that. But he was the sole owner. He acted as the sole owner only. I want to talk about specially ordered and commissioned because the suggestion is that that makes it work for hire. It doesn't make it work for hire. You can have specially ordered and commissioned and you can have a writing that says, this confirms that it's not work for hire. You can still have specially ordered and commissioned. Most columns, most regular columns by freelancers are specially ordered and commissioned. It doesn't make them work for hire. What makes them work for hire is an understanding. That's what this court said in Playboy. An understanding at the time of creation that the work is work for hire. I have some examples, but I have no time. One example. A freelancer sends a piece to a magazine and it's specially ordered and commissioned. Let's concede that. And they don't say anything. There's no writing about work for hire. But the freelancer grants movie rights. And there's a major motion picture. And the publisher says in an email, congratulations on your movie sale. Can you get me tickets to the opening? The publisher doesn't think he's the copyright owner. The publisher doesn't say, hey, why did you license that movie? I own those rights. In my hypothetical, it's specially ordered and commissioned. We want you to do this and we're going to pay you for it. But you sold the movie rights and I want you to get me tickets to the opening. I just want to make sure I understand you. Is your position that when the agreement says it was always our understanding, that even if that is some evidence of what their prior understanding was, it doesn't matter because the agreement has to be in writing and it shouldn't be honored when it comes five years after the event? That is my starting position, yes. I also think there was never a meeting of the minds. This letter, I think, is a sham. It's a shameful sham. But even if it correctly evidences their true intent, it doesn't matter. That's your view, right? Well, unless you can retroactively make a letter in 2001. I understand. Unless, and you think that can't be done. I don't think Playboy remotely, even arguably, permits that. Thank you. Thank you. Thank you both. We'll reserve decision.